(C.D. 2788)

MEADOWS WYE & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 17, 1966)

*Wittenberg, Carrington & Weinberger* (*Philip Wittenberg* and *Raymond B. Harding* of counsel) for the plaintiff.

*J. William Doolittle*, Acting Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

OLIVER, Judge: This protest covers the importation of unbound alphabet books entitled "Brian Wildsmith's ABC" which were classified by the collector under the provision in paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 55816, for toy books without reading matter other than letters, numerals, or descriptive words, bound or unbound, and assessed with duty thereunder at the rate of 31½ per centum ad valorem. Plaintiff claims that the merchandise is properly dutiable at the rate of 7½ per centum ad valorem as "Books * * * for children's use, * * * with reading matter other than letters, numerals, or descriptive words" within paragraph 1410 of the 1930 act, as modified by T.D. 51802.

The relevant portions of the competing paragraphs read as follows: Paragraph 1513, as modified by T.D. 55816:

Toy books without reading matter (not counting as reading matter any printing on removable pages) other than letters, numerals, or descriptive words, bound or unbound, and parts thereof_____ 31½% ad val.

Paragraph 1410, as modified by T.D. 51802:

Books of paper or other material for children's use, printed lithographically or otherwise, not exceeding in weight twenty-four ounces each, with reading matter other than letters, numerals, or descriptive words _____ 7½% ad val.

At the trial, plaintiff introduced into evidence the testimony of two witnesses, plus a number of exhibits, in an effort to demonstrate that the imported merchandise is recognized as a book and not a toy. Included in the exhibits are the following three representative samples of Wildsmith's work: Illustrative exhibit 1, representing the book as imported, that is, in unbound, collated sheets; illustrative exhibit 2, representing the book after it has been sewn and bound in this country in what was termed "library binding," having a strong construction for use in libraries; and illustrative exhibit 3, representing the book sewn and bound in a "trade edition" binding for use in the general trade (R. 9–13).

The Children's Book Section of the New York Times Review Section, May 12, 1963, pages 4 and 5, containing a brief review of a number of children's books including the instant work was received in evidence as plaintiff's exhibit 8. It sets forth a description quite apropos of the nature of the imported books stating that—

* * * the book employs generally traditional animals and objects, identifying each on a facing page in capital and lower case letters, setting off the first letter with special emphasis.

The illustrations which pictorialize the animal or object identified on the facing page are excellently conceived, being imaginative and colorful. As the Times Review concludes:

> Mr. Wildsmith, however, soars far above the conventional with gorgeous paintings set against backgrounds of ever-varied colors. In beauty and practicality the book is unsurpassed.

Miss Lavinia Russ, a buyer of children's books for Scribner's Book Store in New York City, testified that she had compiled a catalog of children's books entitled "Books Forever For Children" (plaintiff's exhibit 4) in which the imported book is listed. She also edited the children's section of a catalog of books entitled "Christmas 1963" (plaintiff's exhibit 5) for Scribner's wherein Wildsmith's ABC book is listed with the comment—"The ABC's will become a source of wonder and delight to the child who discovers them in this stunningly illustrated alphabet book." Finally, Miss Russ testified that she aided in the preparation of "The Scribner Book Fair, 1964–1965" (plaintiff's illustrative exhibit 6), a list of books compiled in part of books listed in "Books Forever For Children" (plaintiff's exhibit 4, *supra*). It is a publication sent to private and public schools around the country for use in making "Book Fairs."

On cross-examination, the witness testified that children from 3 to 6 or 7 years would be interested in Mr. Wildsmith's book or those "in the early pre-kindergarten or kindergarten * * * or first grade." She acknowledged that "* * * the reading matter is not extended beyond words descriptive of the pictures contained therein," the words being descriptive and not containing rhymes or stories.

In response to a question as to whether she thought the book was used to amuse children, she answered:

> Well, I am a little confused by the word "amused." I think it is used for education of children. I think most adults know their ABC's.

However, she did agree with the comment in plaintiff's exhibit 5, quoted, *supra*, that through this book the ABC's become a source of wonder and delight to the child. She also testified that she had given the book to little boys aged 1, 4, and 6 and that—

> They were enjoying the colors and the boldness and the handsomeness of the design. They were comparing, showing it to each other and having a good time with it.

On redirect examination, she stated that Scribner's has no toy department and does not sell toys.

Plaintiff's second witness, Mr. Franklin Watts, identified himself as a book publisher specializing in children's books and said that he has owned his own company, Franklin Watts, a subdivision of Grolier,

Inc., for the past 22 years. Before that he worked as a publisher's representative and, from 1925 to 1932, he was a book buyer for two retail stores. He identified plaintiff's illustrative exhibit 7 as the jacket for the imported ABC book. It contains some additional descriptive material concerning both the book and the author and is used as an outside cover on plaintiff's exhibits 2 and 3.

At this point, plaintiff's exhibit 8 (The New York Times Book Review, Children's Book Section, referred to, *supra*), was entered into evidence. Watts testified that his company submitted the book for review but that the review given is solely the work of the reviewer.

A letter addressed to this witness from Virginia Haviland, head of the children's book section of the Library of Congress, and an accompanying announcement of a book exhibit wherein the imported book was mentioned as displayed, were marked for identification but were not received in evidence (exhibit 9 for identification). However, it was agreed at one point that the imported book was exhibited in the Library of Congress showcase among its collection of children's books.

Plaintiff further offered in evidence collective exhibits 10–A through 10–F comprising various catalogs, magazines, and bulletins. Exhibits 10–A and 10–D consist of the American Library Association publication entitled "The Booklist and Subscription Books Bulletin"; exhibit 10–B is a Child Study Association Publication called "books of the year, 1963"; exhibits 10–C and 10–F are publications of the "Publisher's Weekly, The Book Industry Journal"; and exhibit 10–E is a December 1963 publication of the New Jersey Education Association entitled "NJEA Review." In each publication, the imported book is listed, with or without comment, under a section dealing with books for children.

In addition to his many years in the book business, Mr. Watts testified that at one time he had been a toy buyer with the George Innis Co. in Wichita, Kans. The length of this employment was not mentioned, but he did state that he had purchased toy books for the company's toy department. It was his opinion that "there is a difference in the book business between the designation 'toy books' and regular books," explaining that—

Toy books are very largely expendable books * * * something for kids to kick around, play around or toss around. They are books which usually are not bound together for permanent use; they are books that either can be opened up and expanded; they are books that are printed sometimes on linen cloth, or cloth, so that they can be washed, or they are put in hard, very hard individual covers.

It was also his opinion that the merchandise represented by plaintiff's exhibits 1, 2, and 3 are known in the trade as books and not as toy books. He testified that they are sold in all leading book stores and, very

extensively, to public and school libraries, libraries representing the main market.

On cross-examination, Watts agreed that the imported merchandise was designed for the use of children and that wording in the book is descriptive of the pictures. However, he disagreed in part with the testimony of plaintiff's first witness with respect to the ages of the child users stating that the sales to libraries would primarily be for children in the 6 to 8 age group.

At the close of this testimony, both parties submitted.

In its brief, plaintiff suggests that the question in this case is comparatively simple, namely, "Is the merchandise at bar a book or is it a toy?" However, this characterization of the issue tends rather to beg the question, raising a dichotomy between the collector's classification and the claimed classification which does not, in fact, exist. That the importation is a book is not disputed; nor does the existence of that fact, by itself, impinge upon the propriety of the assessment. The question is, as a book, is the imported merchandise provided for in paragraph 1513 or paragraph 1410?

To support its claim, plaintiff refers us to three decisions of this court decided under the 1922 Tariff Act for the proposition that the imported items are not toy books measured by traditional judicial tests. *Samuel Gabriel Sons & Co.* v. *United States*, 57 Treas. Dec. 607, T.D. 43970; *Atlantic Book & Art Corp.* v. *United States*, 50 Treas. Dec. 747, Abstract 1119; *Helvetic Importing & Manufacturing Corp.* v. *United States*, 58 Treas. Dec. 361, T.D. 44295. While we have recognized that the language in paragraphs 1414 and 1310 of the 1922 act is substantially similar to that of the corresponding paragraphs 1513 and 1410 of the 1930 act (*D. C. Andrews & Company, Inc.* v. *United States*, 35 Cust. Ct. 233, Abstract 59270), an examination of those cases reveals that, not only was the merchandise quite different from that involved here, but also the decisions reached are far from setting a test for the classification of toy books.

In the *Gabriel* case, *supra*, the merchandise consisted of colored panorama books with folders composed of four sheets of cardboard hinged together, containing slots and an attached envelope with figures of "buildings, automobiles, airplanes, boats, etc., intended to be inserted in the various slots" and reading matter describing the picture and "How to Build your Town" instructions. The court held that this merchandise was not only not books for children's use in paragraph 1310 but they were dutiable as "all other toys" in paragraph 1414, not being books at all.

In both the *Atlantic Book* and *Helvetic Importing* cases, *supra*, the merchandise consisted not simply of bound or unbound books but cut-out or windup toy articles as well. Significantly, in each instance,

the court observed that paragraph 1414, under which the merchandise had been classified, contained the provision "all other toys." In any event, in upholding the classifications under paragraph 1414, the court, in each case, found that the reading matter in the book part of the article was limited to descriptive words only.

The *D.C. Andrews* case, *supra*, involved certain books entitled "Children At Play" consisting of 10 illustrations depicting young children engaged in different daily activities. The illustrations were attractively colored and the accompanying wording, such as "Milk for the Kittens" and "Ducky Don't Do That," was suggestive of the picture displayed. The books were classified under paragraph 1513 as toy books without reading matter other than letters, numerals, or descriptive words, and claimed to be dutiable under paragraph 1410 as books of paper or other material "* * * *with reading matter other than letters, numerals or descriptive words.*" [Emphasis quoted.] In holding that the merchandise was properly dutiable as toy books since "None of the captions, describing the illustrations, includes any words attempting to convey a thought or an idea beyond a description of the activity displayed," we viewed as controlling the construction given those words by our appellate court in *B. Westermann Co. (Inc.)* v. *United States*, 17 CCPA 75, T.D. 43361. The court, in that case, reasoned that—

* * * Toy books are designed to excite the interest of and to amuse children. The pictures contained therein are usually accompanied by letters, numerals, or words descriptive thereof. It would seem, from the language employed, that it was the purpose of the Congress to provide for books of that character in paragraph 1414. In any event the provisions for "toy books" are plainly limited to such books as are without reading matter other than letters, numerals, or descriptive words. Of course, the term "descriptive words" might be sufficiently comprehensive to include any narration. However, it is evident from the language of paragraph 1414, especially when read in connection with the language of paragraph 1310, that the Congress intended to limit the provisions for "toy books" in paragraph 1414 to such as were without reading matter other than letters, numerals, or words descriptive merely of the pictures contained therein. * * *

This decision was followed by the same court in *United States* v. *Frederick Warne & Co.*, 18 CCPA 380, T.D. 44638, where, in comparing the scope of the provision for toy books in paragraph 1414 (the predecessor to paragraph 1513) and paragraph 1310 (predecessor to paragraph 1410) it said:

We think it was clearly the intent of Congress to include all books for children's use in the quoted provisions of the two paragraphs, and that, when Congress used the words "more reading matter than" in paragraph 1310, it used the words in the same sense that it used the

words "other than" in paragraph 1414, which excludes the construction of the phrase "more reading matter than" in a comparative sense.

The record before us supports the conclusion that the imported book is designed "to excite the interest of and to amuse children." The evidence clearly indicates that the book is primarily for the use of young children, ranging in age from 1 year to 8, and while it undoubtedly has educational value, the alphabet is presented as " a source of wonder and delight." The only testimony respecting actual use was given by plaintiff's witness Russ who had observed boys aged 1, 4, and 6 "enjoying the colors * * * and having a good time with it." Certainly the prime appeal of the book is in its colorful and imaginative illustrations that can offer repeated fascination to the eye of the child user. Furthermore, along this line, the review put out by the New Jersey Education Association (plaintiff's exhibit 10–E, *supra*), contains the following comment in its review of a number of so-called "trade books," including the instant book:

It should be noted that the trade book is written for a different purpose from the basic text book. The latter is written definitely to instruct while the trade book seeks first to delight the child.

The statute specifically provides that an article may be suitable for mental development and still be within the toy paragraph.

The record evidence, both oral and sample, also supports the conclusion explicit in the collector's classification that the imported books are without reading matter other than descriptive words. The testimony of both of plaintiff's witnesses constitutes an acknowledgment that the wording in Wildsmith's book is not extended beyond describing the pictures contained therein and the sample itself, as a potent witness, allows of no other interpretation.

We are, therefore, unable to find any basis in law or fact to sustain the plaintiff's claimed classification under the provisions of paragraph 1410, and at the same time, plaintiff's case has failed to successfully assail the presumed correctness of the collector's classification under the provision in paragraph 1513 for toy books without reading matter other than letters, numerals, or *descriptive words*. Granting the fact that the imported items "soar" in quality above the conventional, nevertheless, Congress has expressed its intention to make classification depend upon the factors of use and reading matter content.

Before entering judgment in this case, we wish to note that plaintiff has not claimed, much less proved, that the term "toy books" has a commercial designation differing from its common meaning. The testimony offered by plaintiff's witness Watts to the effect that, in the trade, toy books are distinguished from "regular books" by characteristics of design, covering, and material composition, falls far short

of the rigors of proof required to establish commercial designation. *Jas. Akeroyd & Co. et al.* v. *United States*, 15 CCPA 440, T.D. 42641. Furthermore, the language of Congress in paragraph 1513, and judicial interpretations thereof, do not seem to warrant restricting the scope of the term "toy books" in a manner other than the limitations expressly contained therein.

Based on the foregoing conclusions, plaintiff's protest is overruled and judgment will be entered accordingly.